UNI22TED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEEN CHORBAGIAN and
MARK CHORBAGIAN,

        Plaintiffs,                    Case No. 1:21-cv-10207

v.                                          Honorable Thomas L. Ludington
                                                  United States District Judge

STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This is a negligence action arising under Michigan law. The insureds, Kathleen and Mark Chorbagian, allege that their insurer, State Farm Fire and Casualty Insurance Company ("State Farm"), should have advised them about the availability of flood insurance before their house was damaged by the breach of a dam in May 2020. Specifically, Plaintiffs allege that State Farm "had a special relationship with [them] and owed a duty to take all reasonable and necessary steps to provide [them] with up-to-date assessments and advice." ECF No. 1-1 at PageID.13. State Farm has filed a motion for summary judgment, contending that it owed no duty to advise Plaintiffs. ECF No. 19. For the reasons stated hereafter, State Farm's motion will be granted.

**I.**

In 2001, Kathleen and Mark Chorbagian purchased a house along Wixom Lake in Beaverton, Michigan. Mrs. Chorbagian's Dep. Tr., ECF No. 19-3 at PageID.153. Later that same year, they purchased homeowners insurance from State Farm. *Id.* Unsurprisingly, their policy did not contain flood insurance. ECF No. 19 at PageID.127. Plaintiffs did not ask about flood insurance

at the time, and even if they had, they could not have purchased flood insurance because the City of Beaverton was not part of the National Flood Insurance Program (NFIP).[1]

In 2018, Mrs. Chorbagian attended a series of meetings that the local township held regarding the Federal Government's decision to place the township in a "flood zone." ECF No. 19-3 at PageID.153. After the second meeting, Mrs. Chorbagian visited Plaintiffs' State Farm agent, Steven Whitt, to ask about flood insurance. *Id.* He told her that "State Farm did not offer flood insurance." *Id.* By all accounts, Whitt was correct; State Farm had not offered flood insurance in Michigan since 2012, ECF No. 19 at PageID.130, and he had never sold any flood-insurance policies on State Farm's behalf, *see* Whitt's Dep. Tr., ECF No. 22-3 at PageID.264.

In October 2018, the City of Beaverton joined the NFIP, allowing residents to purchase flood insurance from a "Write Your Own" (WYO) carrier or from the Federal Government.[2] *See* ECF No. 19 at PageID.128.

In January 2020, State Farm assigned Plaintiffs a new insurance agent, Dan Durga. ECF No. 19-3 at PageID.153. The next month, Durga drove to Plaintiffs' house and introduced himself. *Id.* at PageID.156. During his visit, he and Plaintiffs discussed various insurance issues, including the recent changes to Michigan's no-fault insurance law and Plaintiffs' boat insurance. *Id.* At no point did they discuss flood insurance. *Id.*

In May 2020, the dam forming Wixom Lake's southern embankment broke, causing catastrophic flooding. Thousands of nearby houses were damaged, including Plaintiffs'. Plaintiffs

---

[1] The NFIP is a federal program that governs the terms and availability of flood insurance. *See* 42 U.S.C. §§ 4011–33. The NFIP is discussed in greater detail in Section III.D., *infra*.
[2] It is unclear whether this occurred before or after Mrs. Chorbagian spoke with Whitt. *See infra* Section III.C.

filed a claim with State Farm for the damage but were denied coverage because their policy did not include flood insurance. *See* ECF No. 1-1 at PageID.12.

In January 2021, Plaintiffs brought this action against State Farm, alleging that Whitt and Durga should have advised them as to the availability of flood insurance and that State Farm was vicariously liable for their negligence. ECF No. 1. In November 2021, State Farm filed a motion for summary judgment, arguing that Whitt and Durga did not owe Plaintiffs a duty to advise. ECF No. 19. The parties have fully briefed State Farm's motion. *See* ECF Nos. 22; 23.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.

### A.

At its core, this case concerns an insurer's duty to advise the insureds about the adequacy and availability of coverage. Plaintiffs allege that their State Farm agents should have informed them about flood insurance after the City of Beaverton joined the NFIP in 2018. ECF No. 1-1 at

PageID.13–15. They claim that if State Farm's agents had advised them about the availability of flood insurance, they would have insured their house before it was damaged. *Id.*

"It is well-established that, in a diversity case such as this one, a federal court must apply the substantive law of the state in which the court sits." *Mill's Pride, Inc. v. Cont'l Ins.*, 300 F.3d 701, 704 (6th Cir. 2002) (applying Michigan law). In Michigan, a negligence claim has four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000) (footnote omitted). Accordingly, the threshold question is whether State Farm's agents owed Plaintiffs a duty to advise.

In Michigan, "[t]he existence of a legal duty is a question of law." *Valcaniant v. Detroit Edison Co.*, 679 N.W.2d 689, 691 (Mich. 2004). In deciding whether a duty exists, this Court must apply controlling decisions of the Michigan Supreme Court. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012) (applying Michigan law). If the Michigan Supreme Court has not squarely addressed an issue, this Court "must predict how the [Michigan Supreme Court] would rule by looking to all the available data." *Id.* In general, "[f]ederal courts should be 'extremely cautious about adopting "substantive innovation" in state law.'" *Id.* (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004)).

**B.**

The seminal case regarding an insurer's duty to advise is *Harts v. Farmers Insurance Exchange*, 597 N.W.2d 47, 48 (Mich. 1999). In *Harts*, a six-year-old boy was killed in a traffic accident with an uninsured motorist. *Id.* at 48. After being denied full coverage for the accident, the boy's parents sued their insurance agent, arguing that the agent should have advised them about uninsured-motorist coverage. *Id.* at 48–49. After the trial court and court of appeals ruled against

the parents, the Michigan Supreme Court granted leave to appeal to determine "whether a licensed insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage." *Id.* at 48. Ultimately, the *Harts* court determined that no such duty existed.

First, the court turned to the common law of agency. Because an insurance agent owes fiduciary duties to the insurer, the court reasoned, "he ha[s] no common-law duty to advise [the insureds]." *Id.* at 50 (first citing *Bruner v. League Gen. Ins.*, 416 N.W.2d 318, 319–20 (Mich. Ct. App. 1987); then citing *Nelson v. Davidson*, 456 N.W.2d 343, 345–46 (Wis. 1990); and then citing STEVEN PLITT ET AL., COUCH ON INSURANCE § 55:5 (3d ed. 2021)). As the *Harts* court further explained, "an [insurance] agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered." *Id.*

The court also emphasized that Michigan licensing statutes distinguish between insurance agents, who are "essentially order takers," and licensed insurance counselors, "who function primarily as advisors." *Id.* at 51 (citing MICH. COMP. LAWS §§ 500.1232, 500.2116). This distinction was proof that "[the Michigan] Legislature . . . [had] recognize[d] the limited nature of the agent's role." *Id.* at 50–51.

In addition to common-law principles and licensing statutes, the *Harts* court also cited "[s]ound policy reasons." *Id.* at 50. Specifically, the court stated that a general rule embracing the duty to advise would be untenable because it:

> (1) "would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available," (2) could result in liability for a failure to advise a client "of every possible insurance option, or even an arguably better package of insurance offered by a competitor," and (3) could provide an insured with an opportunity to self-insure "after the loss by merely asserting they would have bought the additional coverage had it been offered."

*Id.* (quoting *Nelson*, 456 N.W.2d at 346).

But like most general rules, the no-duty-to-advise rule has exceptions. As the *Harts* court explained, an insurance agent might have a duty to advise the insured when "an event occurs that alters the nature of the relationship between [them]." *Id.* at 51. The court dubbed this exception the "special relationship test" and identified four events that could trigger a duty to advise:

> (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured.

*Id.* at 52 (footnotes omitted).

Based on the facts before it, however, the *Harts* court found that none of the four events had occurred. *See id.* at 52 (noting that the agent did not "misrepresent[] the coverage offered or provided," did not receive any ambiguous coverage request, and did not "expressly agree or promise to advise [the parents] about insurance coverage generally or uninsured motorist coverage specifically"). Therefore, the court affirmed the dismissal of the parents' suit. *Id.*

## C.

Here, Plaintiffs have not made a sufficient showing of duty.

### i.

First, Plaintiffs have not pointed to any record evidence suggesting that either Whitt or Durga misrepresented the availability of flood insurance.

Regarding Durga, there is no evidence that Plaintiffs ever asked Durga about flood insurance or that he misrepresented the availability of flood insurance. Indeed, the February 2020 conversation between Plaintiffs and Durga involved Plaintiffs' auto and boat insurance, not flood insurance. *See* ECF No. 19-3 at PageID.156.

Similarly, there is no evidence that Whitt ever misrepresented the availability of flood insurance. When Mrs. Chorbagian asked him about flood insurance in 2018, he told her that "State Farm did not offer flood insurance." *Id.* at PageID.154. That statement was true, regardless of whether Plaintiffs could have purchased flood insurance elsewhere. Moreover, even if Whitt told her that flood insurance was unavailable, it is unclear whether that statement would have been false. Mrs. Chorbagian testified that she spoke with Whitt after attending the second township meeting but could not remember the exact date. *See id.* at PageID.154–55. According to township records, the first meeting took place in March 2018, and it is unclear when the second meeting took place. *See* ECF No. 22-8 at PageID.294. In other words, there is no evidence regarding whether the second meeting took place before or after the City of Beaverton joined the NFIP in October 2018. Although this Court must draw all reasonable inferences in Plaintiffs' favor, *see Liberty Lobby*, 477 U.S. at 251–52, it would seem unreasonable to infer, based on Mrs. Chorbagian's testimony alone, that she met with Whitt *after* the City of Beaverton joined the NFIP.

For these reasons, Plaintiffs have not shown that Whitt or Durga misrepresented the availability of flood insurance.

**ii.**

Second, even if Plaintiffs had shown that Whitt or Durga misrepresented the availability of flood insurance, they have not shown that such a misrepresentation would have triggered a duty to advise.

As State Farm notes, this case and *Harts* are distinguishable in at least one important respect: State Farm did not sell flood insurance in Michigan in 2019 and had not since 2012. This distinction is significant because, in seemingly all the Michigan cases discussing whether a special relationship existed, the policy or coverage at issue was one that the insurer offered. *See, e.g.*,

*Maynard v. Murray*, No. 353850, 2021 WL 6064481, at *1 (Mich. Ct. App. Dec. 21, 2021); *Hastings City Bank v. Jackson Nat'l Life Ins.*, No. 251865, 2005 WL 602567, at *1 (Mich. Ct. App. Mar. 15, 2005); *Scarsella Tile & Marble, Inc. v. Sanders*, No. 213122, 2000 WL 33389889, at *1 (Mich. Ct. App. Dec. 19, 2000).

In other words, Plaintiffs argue for a substantive expansion of Michigan law. Rather than holding State Farm liable for not advising about its own products, Plaintiffs would hold State Farm liable for not advising about products sold by the Federal Government and other insurance companies. Plaintiffs have not identified any authority—persuasive or otherwise—that suggests that the "special relationship" test should extend to Plaintiffs' circumstances, and this Court is unaware of any such authority. *See Berrington*, 696 F.3d at 608 (in a diversity case, the district court "must predict how the court would rule by looking to all the available data").

Given the dearth of authority in support of Plaintiffs' view, this Court declines to extend the "special relationship" test beyond its usual domain. As previously noted, the "special relationship" test is a "very limited" exception to the general rule that an insurance agent has no duty to advise. *Harts*, 597 N.W.2d at 48. That general rule derives in part from common-law principles of agency—principles that are at odds with Plaintiffs' theory of liability. *See id.* at 50 (noting that insurance agent must "act for [insurer's] benefit").

Similarly, Plaintiffs' reading of *Harts* would likely frustrate the public policy underlying Michigan's no-duty-to-advise rule. Indeed, in discussing the "[s]ound policy reasons" for the rule, the Michigan Supreme Court explained that a contrary rule might require insurance agents to advise clients of "an arguably better package of insurance offered by a competitor." *Id.* at 50. As a general matter, federal courts must be "extremely cautious about adopting 'substantive innovation' in state law." *Berrington*, 696 F.3d at 607. Given the nature of this case, that

admonition is particularly salient here. Ultimately, without any sound reasoning or authority in support, this Court declines to depart from existing law and risk dramatically expanding the scope of an insurer's duty to advise.

### iii.

For these reasons, Plaintiffs have not shown that either Whitt or Durga owed them a duty to advise. Because Plaintiffs cannot show that State Farm's agents owed them a duty, their negligence claim fails as a matter of law. *See Harts*, 597 N.W.2d at 52 (affirming summary disposition for defendants because the parents "failed to establish the duty element of their negligence claim against [the insurance agent]").

### D.

In addition to arguing that its agents owed no duty to advise Plaintiffs, State Farm makes another argument that should be addressed to complete the record.

State Farm argues that, even if Whitt and Durga breached a duty to advise, State Farm cannot be held liable for the breach because, as a matter of federal law, they were not acting on State Farm's behalf when discussing flood insurance.[3] ECF No. 22 at PageID.150 (citing 44 C.F.R. § 61.5 (amended 2021)).

As previously noted, the Federal Government regulates flood insurance through the NFIP, a federal program that Congress enacted in 1968 as part of the National Flood Insurance Act (NFIA), 42 U.S.C. § 4001 *et seq.* As relevant here, the NFIP "has two components: (1) a system

---

[3] Confusingly, State Farm also argues that it cannot be held liable for any breach of duty by Whitt or Durga because they are independent contractors. ECF No. 23 at PageID.309. Because State Farm raised this argument for the first time in its reply brief, it is deemed waived. *See Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) ("Generally speaking, arguments raised for the first time in reply briefs are waived, and this applies both on appeal, and to summary judgment motions filed in the trial court." (internal citations omitted)).

for providing flood insurance, and (2) a unified national plan for flood management." *D&S Remodelers, Inc. v. Wright Nat'l Flood Ins. Servs.*, 725 F. App'x 350, 354 (6th Cir. 2018). The standard terms and conditions of flood insurance are governed by the "Standard Flood Insurance Policy" (SFIP), which the Federal Emergency Management Agency ("FEMA") published by regulation. *Id.* Under the NFIP, individuals may purchase flood insurance for eligible property from either the federal government or a WYO carrier, which acts a "fiscal agent[] of the federal government." *Id.*

State Farm's argument relies on one of FEMA's regulations governing the terms and conditions of the SFIP. The regulation provides, in relevant part:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, *and the duly licensed property or casualty agent acts for the insured* and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.

44 C.F.R. § 61.5(e) (amended 2021) (emphasis added). Because an insurance agent offering a flood-insurance policy "acts for the insured," *id.*, many courts have held that an insurer cannot be held vicariously liable for its agent's negligence in handling the policy,[4] *see, e.g.*, *Remund v. State Farm Fire & Cas. Co.*, 483 F. App'x 403, 408 (10th Cir. 2012) ("By creating the legal fiction that an insurance agent 'acts for the insured,' instead of for her employer (the private insurance company), § 61.5(e) shields the private insurance company from liability for certain of the agent's tortious acts."); *Bull v. Allstate Ins.*, 649 F. Supp. 2d 529, 542 (W.D. La. 2009) ("By its own terms,

---

[4] Similarly, the Sixth Circuit has held that the NFIA "preempts state-law causes of action based on 'the handling and disposition of SFIP claims.'" *Harris v. Nationwide Mut. Fire Ins.*, 832 F.3d 593, 596 (6th Cir. 2016) (quoting *Gibson v. Am. Bankers Ins.*, 289 F.3d 943, 949 (6th Cir. 2002)).

44 C.F.R. § 61.5(e) effectively negates any vicarious liability claim by the Bulls against Allstate for Agent Fear's negligence because Agent Fear had no duty to act as an agent of Allstate."); *Demouy v. Allstate Ins.*, No. CIV.A. 06-9629, 2008 WL 3851594, at *3 (E.D. La. Aug. 12, 2008).

State Farm argues that, for similar reasons, it cannot be held vicariously liable for Whitt's and Durga's alleged breach of the duty to advise. ECF No. 22 at PageID.153. But as Plaintiffs note, neither Whitt nor Durga handled any flood-insurance policy for Plaintiffs. *Id.* at PageID.250–51. State Farm does not point to any case extending § 61.5(e) to these circumstances, and State Farm's reference to the cases mentioned above is unpersuasive. Invariably, each of those cases involved an insurance agent's negligence in handling or procuring a flood-insurance policy. But as stated, no such negligence is alleged here. Simply put, § 61.5(e) does not apply.

Therefore, State Farm's alternative, agency-based argument does not justify the entry of summary judgment. Nonetheless, State Farm's motion for summary judgment will be granted because Plaintiffs have not shown that State Farm's agents owed them a duty to advise. *See supra* Section III.C.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgement, ECF No. 19, is **GRANTED**.

Further, it is **ORDERED** that Plaintiffs' Complaint, ECF No. 1, is **DISMISSED**.

Dated: February 18, 2022                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge